IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SUSAN BRIENZO,

       Plaintiff,               No. CIV S-06-0864 KJM

    vs.

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,
          Defendant.         <u>ORDER</u>

_____/

       Plaintiff seeks judicial review of a final decision of the Commissioner of Social

Security ("Commissioner") denying applications for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social

Security Act ("Act").  For the reasons that follow, the court grants plaintiff's motion for summary

judgment to the extent specified herein, and denies the Commissioner's cross motion for

summary judgment.

///// 

///// 

_____

[1] On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social Security, replacing Jo Anne B. Barnhart, the original defendant herein. Pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted as the defendant in this action.

I.  Factual and Procedural Background

In a decision dated September 2, 2005, the administrative law judge ("ALJ") determined plaintiff was not disabled.[2]  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review.  The ALJ found that plaintiff suffers severe impairments of obesity and anxiety; that plaintiff's allegations

/////

/////

/////

/////

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

2

1  regarding her limitations are not totally credible; and, that plaintiff retains the residual functional

2  capacity for medium work as follows:

3        lift a maximum of 50 pounds and 25 pounds repeatedly; stand/walk
         in combination for 6 hours or more in the day; can sit without limit
4        when not required to stand or walk; no climbing ladders or
         scaffolds; no working at heights or around hazardous moving
5        machinery; should not be required to reach overhead; relatively
         restricted contact with the public.

6

7  Administrative Transcript ("AT") 27-28.   The ALJ also found that plaintiff is unable to perform

8  any of her past relevant work, but is capable of performing a significant range of medium work,

9  and that "there is a significant number of jobs in the national economy that she could perform,"

10  such as small parts assembler and fast food worker.  Accordingly, the ALJ found that plaintiff is

11  not disabled.  AT 28.

12        Plaintiff contends that the ALJ erred by excluding, without explanation, plaintiff's

13  social functioning limitations from his assessment of plaintiff's residual functional capacity

14  ("RFC").  More specifically, plaintiff claims such exclusion was in error because the only

15  medical opinion on which the ALJ relied was that of the non-examining psychiatrist, who found

16  plaintiff to have more serious social functioning limitations than ultimately determined by the

17  ALJ.  Relatedly, plaintiff argues the ALJ erred by not including those social functioning

18  limitations in the hypothetical question posed to the vocational expert.  Plaintiff also contends the

19  ALJ erred by failing to articulate adequate reasons for not crediting the opinion of plaintiff's

20  therapist, and by discrediting the consultative examining psychiatrist's opinion, and by not

21  including in the RFC assessment the consultative physician's recommendation regarding

22  "periodic positional changes" as part of any employment.

23  II.  Standard of Review

24        The court reviews the Commissioner's decision to determine whether (1) it is

25  based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

26  record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

3

1   Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

2   Substantial evidence means more than a mere scintilla of evidence, but less than a

3   preponderance, Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorensen v.

4   Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

5   reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402

6   U.S. 389, 401, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

7   197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,

8   782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

9   detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

10  1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

11  supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

12  substantial evidence supports the administrative findings, or if there is conflicting evidence

13  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

14  Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

15  improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

16  1335, 1338 (9th Cir. 1988).

17  III.  Analysis

18      A.      RFC Assessment and Vocational Expert

19          Plaintiff contends the ALJ erred by expressly relying on the opinion of Dr. Lon

20  Gottschalk, M.D. – a non-examining Social Security Administration medical consultant – to

21  assess plaintiff's RFC, while at the same time failing to include Dr. Gottschalk's findings as to

22  plaintiff's social functioning limitations.  More specifically, in Dr. Gottschalk's mental RFC

23  assessment, he indicated that plaintiff is moderately limited in her ability to work in coordination

24  with or proximity to others without being distracted by them, in her ability to interact

25  appropriately with the general public, in her ability to accept instructions and respond

26  /////

4

1   appropriately to criticism from supervisors, and in her ability to get along with coworkers or

2   peers without distracting them or exhibiting behavioral extremes.  AT 179-180.

3          The ALJ recited all of these limitations found by Dr. Gottschalk and accorded

4   them substantial weight.  AT 25.  However, the ALJ found that plaintiff's anxiety caused her

5   only "mild difficulties" in maintaining social functioning.  Id.  Plaintiff argues the ALJ erred by

6   failing to explain his basis for this finding, which contradicts the only medical opinion credited

7   by the ALJ in determining plaintiff's mental RFC.

8          Social Security Ruling 96-8p provides that "if the RFC assessment conflicts with

9   an opinion from a medical source, the adjudicator must explain why the opinion was not

10  adopted."  SSR 96-8p.  While administrative law judges are not bound by findings made by

11  agency physicians, they must explain the weight given to the opinions in their decisions.  SSR

12  96-6p.

13         Here, the ALJ explained that he accorded substantial weight to Dr. Gottschalk's

14  decision because "the forms are complete, annotations are provided and Dr. Gottschalk's

15  specialty is psychiatry.  In addition, the assessments have been affirmed as written."  AT 25.

16  This explanation, however, fails to account for the ALJ's finding that plaintiff's social

17  functioning limitations were less severe than determined by Dr. Gottschalk.  Indeed, the ALJ

18  offered no basis for his conclusion that plaintiff had only "mild difficulties maintaining social

19  functioning," when the opinions of Dr. Gottschalk, Dr. Kalman, and plaintiff's therapist

20  indicated more severe limitations.

21         Although, as defendant points out, the ALJ is not required to accept every element

22  of a medical source's opinion in order to rely upon it, Magellanes v. Bowen, 881 F.2d 747, 753

23  (9th Cir. 1989), he must still explain why the assessment conflicts with the only psychiatric

24  medical opinion he credited.  See SSR 96-8p.  The ALJ's failure to do so constitutes error, and

25  that error undermines the evidentiary value of the hypothetical question posed by the ALJ to the

26  vocational expert.

1          Hypothetical questions posed to a vocational expert must set out all the

2   substantial, supported limitations and restrictions of the particular claimant.  Magellanes v.

3   Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's

4   limitations, the expert's testimony as to jobs in the national economy the claimant can perform

5   has no evidentiary value.  DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the

6   ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations

7   of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination

8   must be supported by substantial evidence in the record as a whole.  Embrey v. Bowen, 849 F.2d

9   418, 422-23 (9th Cir. 1988).

10          Here, the ALJ posed a hypothetical based on his findings regarding plaintiff's

11   limited ability to perform medium work.  AT 346.  In particular, the ALJ asked the expert

12   whether plaintiff could perform her past work if she had "relatively restricted contact with the

13   public."  AT 346.  His hypothetical did not include any limitations plaintiff might encounter in

14   her ability to interact with coworkers and supervisors, as indicated by Dr. Gottschalk.

15          Defendant's argument that the hypothetical posed by the ALJ contemplated

16   plaintiff's social functioning limitations is unpersuasive.  Defendant argues that the ALJ's

17   hypothetical was adequate and consistent with Dr. Gottschalk's RFC assessment.  Defendant

18   further argues that unskilled work, by definition, deals with objects rather than people, and

19   therefore accounts for plaintiff's social functioning limitations.

20          Although in Social Security Ruling 85-15, the Administration acknowledges that

21   unskilled work "ordinarily involves dealing primarily with objects, rather than . . . people," that

22   ruling also provides that the demands of such work include the "abilities (on a sustained basis) to

23   . . . respond appropriately to supervision, coworkers, and usual work situations. . . ."  Id.

24          As discussed above, although the ALJ acknowledged that plaintiff was limited in

25   her ability to work with the general public, his hypothetical did not acknowledge Dr.

26   Gottschalk's assessment that she was also moderately limited in her abilities to: (1) work in

6

coordination with or proximity to others without being distracted by them, (2) accept instructions and respond appropriately to criticism from supervisors, and (3) get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  Limiting plaintiff to unskilled work not involving significant interaction with the public does not account for these limitations.

Again, the ALJ's finding that plaintiff had only mild limitations in social functioning is not explained and conflicts with the only medical opinion he relied on to determine plaintiff's mental RFC.  Moreover, based on a review of the record, the court is unable to discern the basis for the ALJ's conclusion that plaintiff suffered from mild, rather than moderate, social functioning limitations; that conclusion is therefore unsupported by substantial evidence in the record and constitutes error.  Remand is appropriate for reassessment of plaintiff's mental RFC consistent with the medical evidence.  Any questions posed to the vocational expert on remand shall be based on all the evidence of record reflecting all of plaintiff's limitations.

B.      Opinion of Plaintiff's Therapist

Plaintiff argues the ALJ erred by not crediting the opinion of plaintiff's long-time therapist concerning plaintiff's psychological limitations.

Plaintiff began therapy with Linda Oclaray, M.A., in June 2001 for treatment of various psychological issues, and continued to see her on a regular basis thereafter.  AT 257, 263.  In July 2005, at plaintiff's attorney's request, Ms. Oclaray completed a mental RFC assessment, in which she diagnosed plaintiff with panic disorder, social phobia, agoraphobia and a personality disorder with avoidant traits.  AT 263.  Furthermore, Ms. Oclaray assigned plaintiff a GAF[3] of 45, and found that she had no useful ability to maintain regular attendance, be punctual, work in coordination with or proximity to others without being unduly distracted, complete a

---

[3]  GAF stands for Global Assessment of Functioning, a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994) ("DSM IV").

1  normal workday or workweek without interruptions from psychologically based symptoms, or

2  deal with normal work stress.  AT 24, 265.

3        Plaintiff argues that the ALJ erred by failing to explain adequately his basis for

4  not crediting Ms. Oclaray's opinion.  In particular, plaintiff points to Social Security Ruling

5  06-03p, which clarifies how the Social Security Administration considers opinions from sources

6  that are not "acceptable medical sources" as defined in 20 C.F.R. § 404.1513(a) and 416.913(a).[4]

7  That ruling confirms that "only 'acceptable medical sources' can be considered treating sources

8  . . . whose opinions may be entitled to controlling weight."  SSR 06-03p (citing 20 C.F.R.

9  § 404.1527(d) and 416.927(d)).  The ALJ correctly acknowledged that pursuant to these

10 regulations, Ms. Oclaray's views could only be considered "as evidence of the severity of the

11 claimant's impairments and as evidence of how those impairments affect the claimant's ability to

12 work."  AT 25.

13       The ALJ gave little weight to Ms. Oclaray's assessment because it was based on

14 the subjective complaints of the plaintiff, whom the ALJ found to be less than fully credible.[5]

15 AT 22, 24-25.  Further, the ALJ concluded that Ms. Oclaray's assessment was not consistent

16 with other evidence in the record.  For example, an examining psychologist, Dr. Kalman,

17 assigned plaintiff a much higher GAF than did Ms. Oraclay.[6]  AT 149; cf. id. 263.  Further, Dr.

18

19       [4] Plaintiff does not dispute that Ms. Oclaray is not an "acceptable medical source" as
   defined under those regulations.

20

21       [5] The ALJ found plaintiff's statements concerning the impact of her impairments on her
   ability to work "not entirely credible."  AT 22.  In particular, the ALJ remarked that plaintiff's

22 daily activities were not limited to the extent expected given her claimed physical limitations.  Id.
   Further, the ALJ cited contradictory answers given by plaintiff regarding her reasons for quitting

23 her newspaper delivery job; i.e., her medical records indicate she quit so as not to interrupt her
   son's sleep, whereas her disability application cites to eyesight problems, and back and arm pain.

24 AT 22, 86, 95, 252.

25       [6] Dr. Kalman assigned plaintiff a GAF of 60, whereas Ms. Oraclay assigned her a GAF of
   45.  A 41-50 rating indicates serious symptoms such as suicidal ideation, severe obsessional

26 rituals, or serious impairment in social, work, or school functioning.  In contrast, a 51-60 rating
   indicates moderate symptoms such as flat affect or occasional panic attacks or difficulty in social,

1   Gottschalk – the psychiatrist whose opinion the ALJ accorded the most weight – concluded that

2   plaintiff had only moderate difficulties in maintaining social functioning and mild restrictions as

3   to daily living activities and maintaining concentration, persistence or pace.  AT 25, 173.  These

4   findings contradict Ms. Oclaray's findings that plaintiff has "no useful ability" to maintain

5   regular attendance, be punctual, work in coordination with or proximity to others without being

6   unduly distracted, or complete a normal workday or workweek without interruptions.  AT 265.

7   They also contrast with Dr. Kalman's findings that plaintiff merely "has a decreased ability" to

8   deal with supervisors, co-workers, and the public, and to withstand the stress and pressures of

9   daily work activities.  AT 149.

10          Accordingly, the court finds that the ALJ adequately explained his decision to

11  assign little weight to Ms. Oraclay's opinion.  That decision was supported by substantial

12  evidence in the record, and therefore was not in error.

13          C.    Dr. Kalman's Opinion

14          Plaintiff argues that the ALJ erred by discrediting the opinion of the

15  Commissioner's examining psychiatrist, Dr. Kalman.  Although the ALJ did not explicitly reject

16  Dr. Kalman's opinion, he gave it "reduced weight" because Dr. Kalman's findings were

17  "inconsistent and contrast sharply with the other evidence of record, rendering them less

18  persuasive."  AT 25.

19          The weight given to medical opinions depends in part on whether they are

20  proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246

21  F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  To evaluate

22  whether an ALJ properly rejected a medical opinion, in addition to considering its source, the

23  court considers whether (1) contradictory opinions are in the record, and (2) clinical findings

24  support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining

25  ───────────────

26  work or school relationships, such as few friends or conflicts with peers or co-workers.

9

1    medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 831.  In

2    contrast, a contradicted opinion of a treating or examining professional may be rejected for

3    "specific and legitimate" reasons.  Id. at 830.  The opinion of a non-examining professional,

4    without other evidence, is insufficient to reject the opinion of a treating or examining

5    professional.  Id. at 831.

6          Here, the ALJ did not give clear or specific reasons for according less weight to

7    Dr. Kalman's findings.  Rather, he made the conclusory finding that they were "inconsistent and

8    contrast sharply with the other evidence of record."  AT 25.  This characterization of Dr.

9    Kalman's opinion does not square with the record, particularly insofar as Dr. Kalman found that

10   plaintiff "has a decreased ability to deal with supervisors and co-workers" as well as a decreased

11   ability "to deal with the public" and "to withstand the stress and pressures of daily work

12   activities."  AT 149.  These findings are entirely consistent with Dr. Gottschalk's findings that

13   plaintiff has "moderate difficulties maintaining social functioning" and is moderately limited in

14   her ability to interact appropriately with the general public, to accept instructions and respond

15   appropriately to criticism from supervisors; and to get along with coworkers or peers without

16   distracting them or exhibiting behavioral extremes.  AT 173, 180.

17         The opinions of Drs. Kalman and Gottschalk are consistent, and therefore not

18   contradictory, with regard to plaintiff's social functioning limitations.  The court therefore is

19   unable to determine what portions of Dr. Kalman's opinion the ALJ found unpersuasive and "in

20   contrast" with the other evidence in the record.  The ALJ provides no clarification on this point.

21   Given this lack of clarification, the court finds the ALJ failed to give clear and convincing – let

22   alone specific and legitimate – reasons for assigning examining psychiatrist Dr. Kalman's

23   opinion so little weight.  Accordingly, remand is appropriate for additional evaluation of Dr.

24   Kalman's opinion with regard to plaintiff's mental limitations and the effect of those limitations

25   on her ability to work.  On remand, the ALJ should explain what parts of  Dr. Kalman's opinion

26   he finds to be in contrast with the record and why.  To the extent he believes Dr. Kalman's

1    opinion to be contradicted by Dr. Gottschalk's opinion, he must explain that contradiction and

2    provide specific and legitimate reasons, in addition to other evidence, in order to reject Dr.

3    Kalman's opinion and rely solely on Dr. Gottschalk's opinion.  Lester, 81 F.3d at 830-31.  To the

4    extent the ALJ finds Dr. Kalman's opinion to be uncontradicted by any other medical opinion, he

5    must provide clear and convincing reasons for giving it so little weight.  Id. at 831.

6          D.     Dr. Turkot's Opinion Regarding "Positional Changes"

7               Finally, plaintiff argues that the ALJ, who credited the opinion of Dr. Liana

8    Turkot, M.D., in determining plaintiff's "physical" RFC, failed to explain his basis for not

9    crediting the portion of Dr. Turkot's opinion recommending "periodic positional changes" during

10   an eight-hour workday.  AT 146.

11              After examining plaintiff at defendant's request, Dr. Turkot opined that the

12   number of hours plaintiff "could be expected to stand and/or walk in an eight-hour workday

13   would be without restrictions," and that plaintiff "could be expected to sit in an eight-hour

14   workday . . . without restrictions."  Id.  Dr. Turkot also indicated that "periodic positional

15   changes would be recommended secondary to back pain and multiple joint pains."  Id.

16              The ALJ determined that plaintiff retained the residual functional capacity to

17   perform a range of medium work, and that she can "stand/walk in combination for 6 hours or

18   more in the day; [and] can sit without limit when not required to stand or walk. . . ."  AT 25.

19   Although the ALJ noted Dr. Turkot's recommendation regarding "positional changes," AT 23, he

20   did not include any such limitation as part of his ultimate assessment of plaintiff's RFC.

21              Plaintiff argues that the ALJ's failure to include this seeming limitation

22   recommending "periodic positional changes" constitutes error, in that the "positional changes"

23   recommendation indicated by Dr. Turkot constitutes an uncontradicted opinion of an examining

24   physician.

25              As explained above, an ALJ may reject an uncontradicted opinion of a treating or

26   examining medical professional only for "clear and convincing" reasons.  Lester , 81 F.3d at 831.

1    Here, the ALJ did not reject the opinion of Dr. Turkot.  To the contrary, he accorded her opinion

2   great weight.  Furthermore, Dr. Turkot's findings are not as ambiguous as plaintiff suggests.  Dr.

3   Turkot found that plaintiff's ability to stand and/or walk in an eight-hour workday is without

4   restriction and that she could be expected to sit during an eight-hour workday without

5   restrictions.  AT 146.  The ALJ credited these findings in conjunction with the assessment of Dr.

6   Janice Thornburg, the non-examining consultant who also completed a RFC assessment as to

7   plaintiff's physical abilities.  Dr. Thornburg found that plaintiff could stand/walk/sit (with normal

8   breaks) for about 6 hours in an eight-hour workday.  AT 23-24, 153.

9           The ALJ's conclusion that plaintiff can "stand/walk in combination for 6 hours or

10   more in the day; [and] can sit without limit when not required to stand or walk. . .," AT 25, is

11   based on, and consistent with, the findings of both Drs. Turkot and Thornburg, and is supported

12   by substantial evidence in the record.  Accordingly, plaintiff's request for remand to resolve the

13   alleged inconsistency between Dr. Turkot's recommendation and the ALJ's RFC assessment is

14   denied.

15   IV.  Conclusion

16           In accordance with the foregoing, IT IS HEREBY ORDERED that:

17           1.  Plaintiff's motion for summary judgment is granted in part;

18           2.  The Commissioner's cross-motion for summary judgment is denied in part;

19   and

20           3.  This matter is remanded for further proceedings consistent with this order.

21   DATED:  September 28, 2007.

22

23   _____

24   U.S. MAGISTRATE JUDGE

25

26   mb
     Brienzo.ss

                                        12